## Stark, Appellant, *v.* Mercer, Adm'r.

It is a settled rule that a bill of review can only be entertained for errors of law appearing in the body of the decree, or for new and material matter discovered after enrolment of the decree.

A general decree on the foreclosing of a mortgage, that the complainant have execution for any balance unsatisfied by the sale, is error; for which the decree will be reversed. The remedy for such balance is at law.

APPEAL from the superior court of chancery.

This was a bill filed by Stark for a review of a decree made against him in the superior court of chancery, in favor of Mercer, as administrator, &c. The decree was for the foreclosure of a mortgage, and the sale of the mortgaged property to the amount of 10,152 dollars and 54 cents. The decree gave Stark thirty days to pay the debt and interest, and if not paid in that time, the equity of redemption was to be foreclosed, and the property sold at public sale.

The decree also provided, that if the mortgaged premises did not sell for sufficient money to discharge the debt, then Mercer should have execution generally, against Stark for the deficit.

The bill alleged the discovery of new and important testimony. There was a demurrer to the bill, decree of dismissal, and an appeal to this court.

Several other points were made in this cause, but not being pertinent to the decision of the court are omitted to be stated.

Winchester, for the appellant.

1. The chancery court has no power to enforce its decrees by executions at common law, and section 66 gives no such authority. Rev. Code, 66. Besides, the jurisdiction of the court only extended to foreclose and sell.

2. There is an allegation in the cross bill, that the land sold for less than its value, because it was understood by bidders, that the

32*

[Stark, Appellant, *v.* Mercer, Adm'r.]

land was to be purchased in trust by Farrar. The new matter discovered is evidence of this averment.

1. The decree must be signed, before it can be enrolled.

After enrolment, a rehearing cannot be granted; but before enrolment, if either party feel aggrieved by the decree, he may petition the court for rehearing.

In New York, the chancellor cannot sign the decree, until thirty days after it is pronounced, to give the party an opportunity to apply for rehearing. Blake's Chan. Prac. 163. The same rule in this state. Rules in the Court of Chancery, p. 17, Rule 27. So in England, 2 Mad. 452, 454. Here one judge was not authorised to render a final decree.

The decree being drawn up and approved, and signed in chancery, by the chancellor, and in the exchequer by such of the barons as were present at the hearing, it is engrossed on rolls of parchment. Barton's Equity, 199; Practice in South Carolina, 4 Eq. Rep. 347. It is the signing by the judges which makes it a final decree. The enrolment of a decree before it is signed, is of course irregular and a surprise, and the decree will be opened.

The decree ought to be opened, and the cause remanded to the chancery court for a hearing upon the merits. 2 Maddock, 464.

" Where error appears in the body of the decree, if enrolment is gained by surprise, or irregurality, it will be opened."

2. If the Supreme Court had no jurisdiction to make the decree, it ought to be set aside for that reason, and the cause remanded in the same situation it was in when transferred to the Supreme Court. Walker's Rep. p. 453, shows the court were divided equally.

M'Murran, *contra.*

The first objection to the bill of review in this case may, perhaps, be considered more a matter of form than substance, but I think it is still a fatal one. Rev. Code, 99, sect. 59. It was granted by a judge of the Supreme Court in vacation. This he had no right to do. It could be done only by the chancellor, or the old Supreme Court in session, sitting as a chancery court. Hardin's Rep. 342, 43. And besides Girault, an original defendant to the suit, ought to have been made a party to the bill of review.

[Stark, Appellant, *v.* Mercer, Adm'r.]

But again. There are but two grounds upon which a bill of review can or will be granted. 2 Mad. Chan. 536, 537, 538, 539. Either for some material error apparent upon the face of the decree, or for some new matter of fact, relevant to the case discovered since the decree was pronounced, and which, with due diligence, could not have been discovered before. 2 Johns. Chan. Rep. 488, 491, &c.; 2 Atkyn's Rep. 528. If the errors be of the former kind, they must be substantial errors in law, and not matters of form or in abatement, or contrary to the proofs in the cause.

After a solemn decision of the case, and a decree pronounced, it will not be reviewed for slight causes. The decree will put at rest the further litigation of the case, unless errors of law are most glaring on the face of the decree, and most flagrant injustice has been done to the party seeking a review of the decree.

On the other hand, if the application be founded on the discovery of material matter since the decree, the showing must be most strong. 3 Johns. Chan. Rep. 126, 127. The discovery of new evidence or witnesses who can depose to the same points in issue, will not do. Hardin's Rep. 451, 456, 342. It must be the discovery of new and material matter, such as a receipt, a release, or the like, and not merely additional testimony. M'Craisan *v.* Finley, 1 Bibb, 455. And that new matter must be unknown to the party, to his counsel and agent, and which could not have been discovered by ordinary diligence, and attention to the preparation of the cause for a hearing. If a bill of review could be sustained on any other ground, there would be no end to them. Franklin *v.* Wilkinson, 3 Munf. Rep. 112, 114. The court will find how decisive the doctrine is laid down in all the authorities cited, and how conclusive against the bill of review in this case. Courts are not at all disposed to open the door of litigation after it has been once, nay, as in this case, twice deliberately closed.

The first three reasons assigned are, that a rehearing was granted, but that Mr. Starkie's counsel was not reheard, he being sick. This is to receive a rigid construction, and it does not appear that that was the sole cause of the counsel not being at court. And the court at that term had a letter from Mr. Walker,

and statements from others as to his health, and it was a matter for the discretion of the court at that time, whether it would hear causes in which Mr. Walker was concerned, and determine them or not. And surely it is no error apparent on the face of the decree, in law, nor is it newly discovered matter, for it was known to the court and all concerned at the time. But the case cited from 3 Munford is direct and conclusive on this point. As to the decree being signed by one judge, it is the practice of the court; it is spread on the minutes of the court, and the minutes are signed by one judge. If it were wrong on that ground, then there was nothing right in the old Supreme Court, from its organisation down, as its records will show. It is assigned, too, that there are some defects in the shape of the decree. I can discover none, and it is like all decrees foreclosing mortgages. Rev. Code, p. 92, sect. 33, gives the court power to prescribe terms of sale.

Mr. Chief Justice Sharkey delivered the opinion of the court.

The complainant, by bill for that purpose, prays a review of a decree made against him by the Supreme Court, in favor of the defendant to this bill, and there is a demurrer, which brings up the whole merits of the bill. If the allegations be sufficient in themselves to justify a review, it must be granted; if not, it must be refused.

It is a settled rule, that admits of no qualification, that a bill of review can only be entertained on one of two grounds. 1. For errors of law appearing in the body of the decree. 2. For new and material matter discovered after the decree is enrolled. Both of these grounds are said to be covered by the present bill.

Amongst the various reasons urged as sufficient to sustain the application, there is but one which deserves consideration. The others, numerous as they are, have no good foundation. The fifth objection taken to the decree is, that the execution therein directed for the balance in case of deficiency in the sale, was illegal.

This question is not entirely free from difficulty. Sales of the mortgaged premises after foreclosure, have taken the place of strict, or technical foreclosures, in which the mortgagee took the land, and are of comparatively recent origin, so that we find but

[Stark, Appellant, *v.* Mercer, Adm'r.]

few authorities on the subject.   The remedy of the mortgagee for a deficiency, is regulated in New York, by statutory provision, by which the chancellor is authorised to make a decree, and grant an execution for the residue.   That a state so celebrated for its eminent jurists should have passed such a statute, may be regarded as evidence almost conclusive, that no such remedy was known in the English practice.   After a diligent search amongst the English authorities, we are unable to find any case in which a decree has been made for a deficiency after sale; on the contrary, the remedy is uniformly regarded as purely a legal one, although the point is not directly decided.  8 Vesey, 527; 13 *Ibid.* 198; 1 Maddock's Chancery, 531.  It is regarded in the same way by the American authorities.   5 Cowen, 380; 4 Kent's Commentaries, 182.  It is evident from the way in which Chancellor Kent treats the subject, that he considers the remedy to be at law on the bond, although he does not directly raise the point.   He did not in the original text, notice the statute, but it is made the subject of a note to the third edition, from which I infer that it is a recent one.   There are good reasons why it is considered a legal remedy, when we consider the respective jurisdictions of the courts of law and equity.   A mortgage is but a lien on a particular thing taken as a collateral security for the payment of money, and the mortgagee always has a concurrent remedy against the person which he may pursue at the same time, which concurrent remedy is purely legal.   A court of chancery can only take jurisdiction for the purpose of making the lien effectual, and where that is accomplished, its jurisdiction ceases, because, from the nature of the contract its aid is required no farther, the collateral remedy being completed.   It is a proceeding *in rem*, auxiliary merely to the remedy against the person.   The mortgage is the only matter in the transaction over which chancery has jurisdiction, and as that was only designed as collateral security, so far as to make the mortgaged property both for an original and independent undertaking, when that is completed, the only subject of its jurisdiction is exhausted.   The indebtedness is independent of the security, and requires no aid from chancery, being cognisable at law.   The bond or note given, is the evidence of the debt, and the foundation of the remedy, the mortgage, is merely collateral

[Stark, Appellant, *v.* Mercer, Adm'r.]

to it.   The note of the case of Dunkley *v.* Van Buren, reported in 3 Johns. Chan. Rep. 330, and cited in the notes to 1 Maddock, 531, seems to be decisive of the question.   The note of the question decided is, that " on a bill to foreclose a mortgage, the mortgagee is confined to his remedy on the mortgage; and the suit cannot be extended to other property, or against the person, in case the property mortgaged proves insufficient to pay the debt." The decree in this case is general, that the complainant have execution for any balance unsatisfied by the sale.   In this it goes too far.   We cannot, in this case, adopt the general rule suggested by counsel, that chancery having obtained jurisdiction for one purpose, will retain it for all.   His remedy seems to be a legal one, over which courts of chancery have not heretofore assumed jurisdiction, and we cannot make new remedies, but can only enforce such as exist, either by statute or the common law.   The case last referred to, it is presumed, was decided before the enactment of the statute in New York for that purpose, and may be regarded as having been made in accordance with the principles of the English practice.

The review must be allowed.